# EXHIBIT A

ORIGINAL

**Fixed (3-Day Rate) Note**                    **CITICORP⊕CITIBANK**

City __GARDEN CITY__    State __NEW YORK__
Date __OCTOBER 17, 1989__

Property Address _____703 CARLYLE STREET, WOODMERE, NY 11598_____

**1. Borrower's Promise To Pay**

In return for a loan that I have received, I promise to pay U.S. $ __285,600.00__ (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is CITIBANK, N.A. __399 PARK AVENUE, NEW YORK, NEW YORK 10043__

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

**2. Interest**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at the yearly rate of _____10.875_____ %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6 (B) of this Note.

**3. Payments**

**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on ____DECEMBER 1____ , 19 _89_ .

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on ____NOVEMBER 1____ , __2019__ , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date". I will make my monthly payments at __CITICORP MORTGAGE INC., 15851 CLAYTON ROAD, BALLWIN, MO 63011__ , or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $____2,692.90____ .

**4. Borrower's Right To Prepay**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. Loan Charges**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. Borrower's Failure To Pay As Required**

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be two percent (2%) of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on the amount. That date must be at least thirty (30) days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) No Waiver of Demand For Immediate Payment In Full**

Any payments accepted by the Note Holder, after the Note Holder has required me to pay immediately in full as described above, shall not constitute a waiver of any kind or description by the Note Holder if the Note Holder returns the amount of such payment to me. In such event, my obligation to pay immediately in full shall continue in the same way as if such payment had not been accepted by the Note Holder.

**(F) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. Giving of Notices**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. Obligations of Persons Under This Note**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its right under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. Waiver**

This Note Holder may, without losing any of its rights under this Note, (i) accept late payments, (ii) accept partial payments marked "paid in full", and (iii) delay in enforcing any of its rights under this Note. I and any other person who has obligations under this Note waive the rights of presentment, notice of dishonor and protest. "Presentment" means the right to require the Note Holder to demand payments of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice that amounts due have not been paid. "Protest" means the right to require the Note Holder to obtain an official certification of nonpayment. No change or cancellation of this Note shall be effective unless the change or cancellation is in writing and has been signed by the Note Holder and me.

**10. This Note Secured By A Security Instrument**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Security Agreement (giving Note Holder a security interest in the shares of stock and proprietary lease described in said Agreement), Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.**
If all or any part of the Property or any interest in it is sold or transferred (or if beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. First Payment**
At the time that I make my first monthly payment, I will also pay the Note Holder interest on the unpaid principal, for the period from the date of this Note to the end of the month in which this Note is signed.

**12. Application of Payments**
All payments received by the Note Holder shall be applied, first, to payments made by the Note Holder to protect its lien under the Security Instrument, second, to pay unpaid late charges, third, on account of interest, and then on account of principal.

**13. New York Law**
This Note shall be governed by the laws of the State of New York and any applicable federal law. In the event of a conflict between any provision of this Note and any federal or New York State statute, law or regulation in effect as of the date of this Note, the statute, law or regulation shall control to the extent of such conflict and the provision contained in this Note shall be without effect. All other provisions of this Note will remain fully effective and enforceable.

**WITNESS:**

_____

_____     AARON FISCHMAN     (Borrower)

_____     NINA FISCHMAN     (Borrower)

_____     _____     (Borrower)

_____     _____     (Borrower)

STATE OF NEW YORK     )
                      )SS:
COUNTY OF NASSAU      )

On this __17TH__ day of __OCTOBER__ ,1989, before me personally came__ AARON FISCHMAN AND NINA FISCHMAN_____, to me known and known to me to be the individuals described in and who executed the foregoing instrument and, they acknowledged to me that  they executed the same.

_____
NOTARY PUBLIC

SIDNEY JACOBS
Notary Public, State of New York
Qualified in Nassau County
Commission Expires Dec. 31, 19__

PAY TO THE ORDER OF
SECURITY PACIFIC NATIONAL TRUST
COMPANY (NEW YORK), AS TRUSTEE
UNDER A POOLING AND SERVICING
AGREEMENT WITH
CITICORP MORTGAGE SECURITIES, INC.
WITHOUT RECOURSE ON US
CITIBANK, N.A.

BETH WOOD, ASSISTANT SECRETARY
ATTORNEY-IN-FACT FOR
CITIBANK, N.A.

PAY TO THE ORDER OF
WITHOUT RECOURSE ON US
CITICORP MORTGAGE, INC.
ATTORNEY-IN-FACT FOR
Bankers Trust Company as Successor to
BankAmerica National Trust Company, F/K/A
Security Pacific National Trust Company
(New York) as Trustee

BY: WILLIAM S. FELTS, Vice President
CITICORP MORTGAGE, INC.

11

# Note Allonge

Statement of Purpose: This Note Allonge is attached to and made a part of the Note, for the purpose of Noteholder Endorsement to evidence a transfer of Interest.

Citi Loan Number:
Date:     October 17, 1989
Original Loan Amount:     $ 285,600.00
Originator:     Citibank, N.A.
Original Mortgagor:     Aaron Fischman and Nina Fischman
Property Address:     703 Carlyle Street     Woodmere, NY 11598
Reference Number:

Pay to the Order of

CitiMortgage, Inc.

Without Recourse

Citibank, N.A.

By:

Jason LaRocca
Assistant Vice President

# Note Allonge

Statement of Purpose: This Note Allonge is attached to and made a part of the Note, for the purpose of Noteholder Endorsement to evidence a transfer of Interest.

Citi Loan Number:
Date:                           October 17, 1989
Original Loan Amount:           $ 285,600.00
Originator:                     Citibank, N.A.
Original Mortgagor:             Aaron Fischman and Nina Fischman
Property Address:               703 Carlyle Street      Woodmere, NY 11598
Reference Number:

**Pay to the Order of**

**Palisades Mortgage Acquisition Company LLC**

**Without Recourse**

**CitiMortgage, Inc.**

By:

**Jason LaRocca**
**Assistant Vice President**

## ALLONGE TO THE NOTE

**LOAN #:** ████████

**Previous Loan #:**
**Borrower:** AARON FISCHMAN AND NINA FISCHMAN
**Date of Note:** 10/17/1989
**Loan Amount:** $285,600.00
**Property Address:** 703 CARLYLE STREET, WOODMERE, NY 11598

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust / Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR PALISADES MORTGAGE LOAN TRUST, SERIES 2013-4 , Without any recourse, representation or warranty, express or implied

### PALISADES MORTGAGE ACQUISITION COMPANY, LLC

Signature: _____

Printed Name: Troy Grande

Title: _____Chief Financial Officer_____

## ALLONGE TO THE NOTE

**LOAN #:** ▓▓▓▓▓▓
**Previous Loan #:**
**Borrower:** AARON FISCHMAN AND NINA FISCHMAN
**Date of Note:** 10/17/1989
**Loan Amount:** $285,600.00
**Property Address:** 703 CARLYLE STREET, WOODMERE, NY 11598

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust / Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR RPMLT 2014-1 , Without any recourse, representation or warranty, express or implied

**CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR PALISADES MORTGAGE LOAN TRUST, SERIES 2013-4, RUSHMORE LOAN MANAGEMENT SERVICES LLC, AS ITS APPOINTED ATTORNEY IN FACT**

Signature: *Linda Henla Chon*

Printed Name: Linda Genneken Chapa

Title: Sr. Vice President

## NOTE ALLONGE

LOAN NUMBER: ▆▆▆▆▆▆▆

BORROWER NAME: **AARON FISCHMAN**
**NINA FISCHMAN**

PROPERTY ADDRESS: **703 CARLYLE STREET**
**WOODMERE, NY 11598**

ORIGINAL NOTE DATE: **10/17/1989**

ORIGINAL NOTE AMOUNT: **$285,600.00**

PAY TO THE ORDER OF:

**WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR RPMLT
2014-1 TRUST, SERIES 2014-1**

WITHOUT RECOURSE,

**WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL
CAPACITY, BUT SOLELY AS TRUSTEE FOR RPMLT 2014-1**

BY RUSHMORE LOAN MANAGEMENT SERVICES LLC ITS APPOINTED ATTORNEY IN FACT

By: _____

Print Name: Jeannette Kabayan

Title: Assistant Vice President

ORIGINAL   New York

## MORTGAGE

**Words Used Often In This Document**

(A) "Mortgage." This document, which is dated __OCTOBER 17__ , 19 _89_ , will be called the "Mortgage."

(B) "Borrower." __AARON FISCHMAN AND NINA FISCHMAN__
__RESIDING AT: 645 MEEHAN AVENUE, FAR ROCKAWAY, NY 11691__

_____ will sometimes be called "Borrower" and sometimes simply "I" or "me."

(C) "Lender." CITIBANK, N.A. will be called "Lender." Lender is a corporation or association which was formed and which exists under the laws of the United States of America. Lender's Address is __399 PARK AVENUE, NEW YORK, NEW YORK 10043__

(D) "Note." The note signed by Borrower and dated __OCTOBER 17, 1989__ will be called the "Note." The Note shows that I may owe Lender up to TWO HUNDRED EIGHTY FIVE THOUSAND SIX HUNDRED AND 00/100 ( $ 285,600.00 )------------------------ ----------------- Dollars plus interest, which I have promised to pay in monthly payments of principal and interest and to pay in full by __NOVEMBER 1, 2019__ . A copy of the Note is annexed hereto as Exhibit A and is made a part of this Mortgage, if your loan is an Adjustable Rate Mortgage.

(E) "Property." The property that is described below in the section titled "Description Of The Property," will be called the "Property."

**Borrower's Transfer To Lender Of Rights In The Property**

I mortgage, grant and convey the Property to Lender subject to the terms of this Mortgage. This means that, by signing this Mortgage, I am giving Lender those rights that are stated in this Mortgage and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note;

(B) Pay, with interest, any amounts that Lender spends under this Mortgage, to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Mortgage.

**Description Of The Property**

I give Lender rights in the Property described in (A) through (J) below:

(A) The property which is located at __703 CARLYLE STREET__
__WOODMERE__    __NEW YORK__   __11598__  This property is
(City)     (State and Zip Code)  (Street)
in __NASSAU__ County in the State of New York. It has the following legal description:
Section 39 Block 192 Lot 218 on the Nassau County Tax Map.

THIS IS A PURCHASE MONEY MORTGAGE SECURING THE PREMISES DEEDED TO MORTGAGOR THIS DATE AND INTENDED TO BE RECORDED SIMULTANEOUSLY WITH DEED.

PREMISES ARE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE ONLY.

SCHEDULE "A" DESCRIPTION OF PROPERTY ATTACHED HERETO.

*If this property is a condominium, the following must be completed:* This property is part of a con-dominium project known as _____
(Name of Condominium Project)

_____ (called the "Condominium Project"). This property includes my unit and all of my rights in the common elements of the Condominium Project.

*If this property is in a planned unit development, the following must be completed:* This property is in a development which is a planned unit development known as _____
_____ (called the "PUD"). The PUD was
_____ (Name of Planned Unit Development)

created by _____ (Document Creating PUD) _____

_____ ;

(B) All buildings and other improvements that are located on the property described in paragraph (A) of this Section;

(C) All rights in other property that I have as owner of the property described in paragraph (A) of this Section. These rights are known as "easements, rights and appurtenances attached to the property";

(D) All rents or royalties from the property described in paragraph (A) of this Section;

(E) All mineral, oil and gas rights and profits, water, water rights and water stock that are part of the property described in paragraph (A) of this Section;

(F) All rights that I have in the land which lies in the streets or roads in front of, or next to, the property described in paragraph (A) of this Section;

(G) All fixtures that are now or in the future will be on the property described in paragraphs (A) and (B) of this Section, and all replacements of and additions to those fixtures, except for those fixtures, replacements or additions that under the law are "consumer goods" and that I acquire more than ten days after the date of the Note. Usually, fixtures are items that are physically attached to buildings, such as hot water heaters;

(H) All of the rights and property described in paragraphs (B) through (F) of this Section that I acquire in the future;

(I) All replacements of or additions to the property described in paragraphs (B) through (F) and paragraphs (H) of this Section; and

(J) All of the amounts that I pay to Lender under Paragraph 2 below.

**Borrower's Right To Mortgage The Property and Borrower's Obligation To Defend Ownership Of The Property**

I promise that except for the "exceptions" listed in any title insurance policy which insures Lender's rights in the Property; (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**UNIFORM PROMISES: I promise and I agree with Lender as follows:**

**1. Borrower's Promise to Pay Principal And Interest Under The Note And To Fulfill Other Payment Obligations**

I will promptly pay to Lender when due: principal and interest under the Note and late charges and prepayment charges as stated in the Note.

**2. Agreements About Monthly Payments For Taxes and Insurance**

**(A) Borrower's Obligation to Make Monthly Payments to Lender for Taxes and Insurance**
I will pay to Lender all amounts necessary to pay for taxes, assessments, ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any). I will pay those amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make those payments on the same day that my monthly payments of principal and interest are due under the Note.

The amount of each of my payments under this Paragraph 2 will be the sum of the following:

(i)   One-twelfth of the estimated yearly taxes, assessments and ground rents (if any) on the Property which under the law may be superior to this Mortgage; plus
(ii)  One-twelfth of the estimated yearly premium for hazard insurance covering the Property; plus

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Incorporated Village of Cedarhurst, Town of Hempstead, County of Nassau and State of New York, known and designated as Lots Numbers 36, 37 and 38 and the northerly one-half of Lot Number 35 in Block 58 as shown and designated on a certain map entitled, "Map of Lord Estates at Cedarhurst-Woodmere, Nassau County, N.Y., Surveyed March 1926 by Vandewater & Lapp, Engineers and Surveyors, Far Rockaway, N.Y.," and filed in the office of the Clerk of the County of Nassau on May 22, 1926 under ███████████ and more particularly bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Carlyle Street with the easterly side of Edward Avenue, running thence easterly and along the southerly side of Carlyle Street, 100 feet;

THENCE southerly and parallel with the easterly side of Edward Avenue 70 feet;

THENCE westerly and parallel with the southerly side of Carlyle Street, 100 feet to the easterly side of Edward Avenue;

THENCE northerly and along the easterly side of Edward Avenue, 70 feet to the corner, the point or place of BEGINNING.

(iii)   One-twelfth of the estimated yearly premium for mortgage insurance (any).

Lender will determine from time to time my estimated yearly taxes, assessments, ground rents and insurance premiums based upon existing assessments and bills, and reasonable estimates of future assessments and bills. (Taxes, assessments, ground rents and insurance premiums will be called "taxes and insurance.") The amounts that I pay to Lender for taxes and insurance under this Paragraph 2 will be called the "Funds."

**(B)   Lender's Obligations Concerning Borrower's Monthly Payments for Taxes and Insurance**
Lender will keep the Funds in a savings or banking institution which has its deposits or accounts insured or guaranteed by a federal or state agency. If Lender is such an institution then Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay taxes and insurance. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds on deposit, for using the Funds to pay taxes and insurance, for analyzing my payments of Funds, or for receiving, verifying and totalling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Mortgage, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

If Lender's estimates are too high or if taxes and insurance rates go down, the amounts that I pay under this Paragraph 2 will be too large. If this happens at a time when I am keeping all of my promises and agreements made in this Mortgage, I will have the right to have the excess amount either promptly repaid to me as a direct refund or credited to my future monthly payments of Funds. There will be excess amounts if, at any time, the sum of (a) the amount of Funds which Lender is holding or keeping on deposit plus (b) the amount of the monthly payments of Funds which I still must pay between that time and the due dates of taxes and insurance, is greater than the amount necessary to pay the taxes and insurance when they are due.

If, when payments of taxes and insurance are due, Lender has not received enough Funds from me to make those payments, I will pay to Lender whatever additional amount is necessary to pay the taxes and insurance in full. I must pay that additional amount in one or more payments as Lender may require.

When I have paid all of the amounts due under the Note and under this Mortgage, Lender will promptly refund to me any Funds that are then being held or kept on deposit by Lender. If, under Paragraph 20 below, either Lender acquires the Property or the Property is sold, then immediately before the acquisition or sale, Lender will use any Funds which Lender is holding or has on deposit at that time to reduce the amount that I owe to Lender under the Note and under this Mortgage.

**3.  Lender's Application of Borrower's Payments**

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

(A)   First, to pay the amounts then due to Lender under Paragraph 2 above and late charges, if any;

(B)   Next, to pay interest then due under the Note; and

(C)   Next, to pay principal then due under the Note.

**4.  Borrower's Obligation To Pay Charges And Assessments And To Satisfy Claims Against The Property**

I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Mortgage. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making payments, when they are due, directly to the persons entitled to them. (In this Mortgage, the word "person" means any person, organization, governmental authority, or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien". I will promptly pay or satisfy all liens against the Property that may be superior to this Mortgage. However, this Mortgage does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) I, in good faith, argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up.

**Condominium and PUD Assessments**

If the Property includes a unit in a Condominium Project or in a PUD, I will promptly pay, when they are due, all assessments imposed by the owners association or other organization that governs the Condominium Project or PUD. That association or organization will be called the "Owner's Association."

**5. Borrower's Obligation To Obtain And Keep Hazard Insurance On The Property**

**(A) Generally**

I will obtain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies, and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. It is possible that the insurance policy will have provisions that may limit the insurance company's obligation to pay claims if the amount of coverage is too low. Those provisions are known as "co-insurance requirements." Lender may not require me to obtain an amount of coverage that is more than the larger of the following two amounts: either (i) the amount that I owe to Lender under the Note and under this Mortgage; or (ii) the amount necessary to satisfy the co-insurance requirements.

I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and the form of all renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals.

I will pay the premiums on the insurance policies either by making payments to Lender, as described in Paragraph 2 above, or by paying the insurance company directly when the premium payments are due. If Lender requires, I will promptly give Lender all receipts of paid premiums and all renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (a) it is not economically possible to make the repairs or restoration; or (b) the use of the proceeds for that purpose would lessen the protection given to Lender by this Mortgage; or (c) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically possible or if it would lessen Lender's protection under this Mortgage, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Mortgage. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. The use of proceeds to reduce the amount that I owe to Lender will not be a prepayment that is subject to the prepayment charge provisions, if any, under the Note.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim for insurance benefits, then Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the amount that I owe to Lender under the Note and under this Mortgage. The 30-day period will begin on the date the notice is mailed or, if it is not mailed, on the date the notice is delivered.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 20 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the amount that I owe to Lender under the Note and under this Mortgage immediately before the Property is acquired by Lender or sold.

**(B) Agreements that Apply to Condominiums and PUD's**

(i) If the Property includes a unit in a Condominium Project, the Owners Association may maintain a hazard insurance policy which covers the entire Condominium Project. That policy will be called the "master policy." So long as the master policy remains in effect and meets the requirements stated in this Paragraph 5: (a) my obligation to obtain and to keep hazard insurance on the Property is satisfied; (b) I will not be required to include an amount for hazard insurance premiums in my monthly payment of Funds to Lender under Paragraph 2 above; and (c) if there is a conflict, concerning the use of proceeds, between (1) the terms of this Paragraph 5, and (2) the law or the terms of the declaration, by-laws,

regulations or other documents creating or governing the Condominium Project, then that law or the terms of those documents will govern the use of proceeds. I will promptly give Lender notice if the master policy is interrupted or terminated. During any time that the master policy is not in effect the terms of (a), (b) and (c) of this subparagraph 5(B)(i) will not apply.

(II)   If the Property includes a unit in a Condominium Project, it is possible that proceeds will paid to me instead of being used to repair or to restore the Property. I give Lender my rights to those proceeds. If the Property includes a unit in a PUD, it is possible that proceeds will be paid to me instead of being used to repair or to restore the common areas or facilities of the PUD. I give Lender my rights to those proceeds. All of the proceeds described in this subparagraph 5(B) (ii) will be paid to Lender and will be used to reduce the amount that I owe to Lender under the Note and under this Mortgage. If any of those proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. The use of proceeds to reduce the amount that I owe to Lender will not be a prepayment that is subject to the prepayment charge provisions, if any, under the Note.

**6. Borrower's Obligation To Maintain The Property And To Fulfill Obligations In Lease, And Agreements About Condominiums And PUD's**

**(A)   Agreements about Maintaining the Property and Keeping Promises in Lease**
I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease.

**(B)   Agreements that Apply to Condominiums and PUD's**
If the Property is a unit in a Condominium Project or in a PUD, I will fulfill all of my obligations under the declaration, by-laws, regulations and other documents that create or govern the Condominium Project or PUD. Also, I will not divide the Property into smaller parts that may be owned separately (known as "partition or subdivision"). I will not consent to certain actions unless I have first given Lender notice and obtained Lender's consent in writing. Those actions are:

(i)   The abandonment or termination of the Condominium Project or PUD, unless, in the case of a condominium, the abandonment or termination is required by law;

(ii)   Any significant change in the declaration, by-laws or regulations of the Owners Association, trust agreement, articles of incorporation, or other documents that create or govern the Condominium Project or PUD, including, for example, a change in the percentage of ownership rights, held by unit owners, in the Condominium Project or in the common areas or facilities of the PUD;

(iii)   A decision by the Owners Association to terminate professional management and to begin self-management of the Condominium Project or PUD; and

(iv)   The transfer, release, creation of liens, partition or subdivision of all or part of the common areas and facilities of the PUD. (However, this provision does not apply to the transfer by the Owners Association of rights to use those common areas and facilities for utilities and other similar or related purposes.)

**7. Lender's Right To Take Action To Protect The Property**

If: (A) I do not keep my promises and agreements made in this Mortgage, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as, for example, a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions under this Paragraph 7 may include, for example, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. This Mortgage will protect Lender in case I do not keep this promise to pay those amounts with interest.

I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the same rate stated in the Note. However, if payment of interest at that rate would violate the law, I will pay interest on the amounts spent by Lender under this Paragraph 7 at the highest rate that the law allows. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this Paragraph.

Although Lender may take action under this Paragraph 7, Lender does not have to do so.

**8. Lender's Right To Inspect The Property**

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before one of those inspections is made, Lender must give me notice stating a reasonable purpose for the inspection. That purpose must be related to Lender's rights in the Property.

**9. Agreements About Condemnation Of The Property**

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Mortgage. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will only be reduced by the amount of proceeds multiplied by the following amount: (i) the total amount that I owe to Lender under the Note and under this Mortgage immediately before the taking, divided by (ii) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me. The use of proceeds to reduce the amount that I owe to Lender will not be a prepayment that is subject to the prepayment charge provisions, if any, under the Note.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, then Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the amount that I owe to Lender under the Note and under this Mortgage. The 30-day period will begin on the date the notice is mailed or, if it is not mailed, on the date the notice is delivered.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

**Condemnation of Common Areas of PUD**

If the Property includes a unit in a PUD, the promises and agreements in this Paragraph 9 will apply to a condemnation, or sale to avoid condemnation, of the PUD's common areas and facilities as well as of the Property.

**10. Continuation Of Borrower's Obligations**

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Mortgage. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Mortgage unless the conditions stated in Paragraph 19 below have been met.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Mortgage, even if Lender is requested to do so.

**11. Continuation Of Lender's Right**

Even if Lender does not exercise or enforce any right of Lender under this Mortgage or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will still have the right, under Paragraph 20 below, to demand that I make Immediate Payment In Full (see Paragraph 20 for a definition of this phrase) of the amount that I owe to Lender under the Note and under this Mortgage.

**12. Lender's Ability To Enforce More Than One Of Lender's Rights**

Each of Lender's rights under this Mortgage is separate. Lender may exercise and enforce one or more of those rights, as well as any of Lender's other rights under the law, one at a time or all at once.

**13. Obligations Of Borrowers And Of Persons Taking Over Borrower's Rights Or Obligations; Agreements Concerning Captions**

Subject to the terms of Paragraph 19 below, any person who takes over my rights or obligations under this Mortgage will have all of my rights and will be obligated to keep all of my promises and agreements made in this Mortgage. Similarly, any person who takes over Lender's rights or obligations under this Mortgage will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Mortgage.

If more than one person signs this Mortgage as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Mortgage. Lender may enforce Lender's rights under this Mortgage against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under the Note and under this Mortgage. However, if one of us does not sign the Note, then: (A) that person is signing this Mortgage only to give that person's rights in the Property to Lender under the terms of this Mortgage; and (B) that person is not personally obligated to make payments or to act under the Note or under this Mortgage.

The captions and titles of this Mortgage are for convenience only. They may not be used to interpret or to define the terms of this Mortgage.

| 14. | Agreements About Giving Notices Required Under This Mortgage | Unless the law requires otherwise, any notice that must be given to me under this Mortgage will be given by delivering it or by mailing it addressed to me at the address stated in the section above titled "Description Of The Property." A notice will be delivered or mailed to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Mortgage will be given by mailing it to Lender's address stated in Paragraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Mortgage is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14. |
|-----|-----|-----|
| 15. | Agreements About Uniform Mortgage And Law That Governs This Mortgage | This is a "Uniform Mortgage." It contains "uniform promises" that are in mortgages used all over the country and also "non-uniform promises" that vary, to a limited extent, in different parts of the country.<br><br>The law that applies in the place that the Property is located will govern this Mortgage. (The foregoing sentence shall not limit the applicability of federal law to this Mortgage.) If any term of this Mortgage or of the Note conflicts with the law, all other terms of this Mortgage and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Mortgage and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced. |
| 16. | Borrower's Copy Of The Note And Of This Mortgage | I will be given a copy of the Note and of this Mortgage. Those copies must show that the original Note and Mortgage have been signed. I will be given those copies either when I sign the Note and this Mortgage or after this Mortgage has been recorded in the proper official records. |
| 17. | Agreements That Apply to VA Loans | A loan that is guaranteed or insured by the United States Veterans Administration is known as a "VA loan." If the loan that I promise to pay in the Note is a VA loan, then my rights and obligations, as well as those of Lender, are governed by that law which is known as Title 38 of the United States Code and the Regulations made under that Title (called the "VA Requirements"). One or more terms of this Mortgage, or of other documents that are signed in connection with my VA loan, might conflict with the VA Requirements. For example, the prepayment terms in the Note or Paragraph 19 of this Mortgage might conflict with the VA Requirements. Lender and I agree that if there is a conflict, the conflicting terms of this Mortgage or other documents are modified or eliminated as much as is necessary to make all of the conflicting terms agree with the VA Requirements. |
| 18. | Borrower's Obligations To Pay Mortgage Insurance Premiums | If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums in the manner described in Paragraph 2 above. |

**NON-UNIFORM PROMISES: I also promise and agree with Lender as follows:**

| 19. | Agreements About Assumption Of This Mortgage And About Lender's Rights If Borrower Transfers The Property Without Meeting Certain Conditions | If I sell or transfer all or part of the Property or any rights in the Property, any person to whom I sell or transfer the Property may take over all of my rights and obligations under this Mortgage (known as an "assumption of the Mortgage") if certain conditions are met. Those conditions are: (A) I give Lender notice of the sale or transfer, (B) Lender agrees that the person's credit is satisfactory; (C) the person agrees to pay interest on the amount owed to Lender under the Note and under this Mortgage at whatever rate Lender requires; and (D) the person signs an assumption agreement that is acceptable to Lender and that obligates the person to keep all of the promises and agreements made in the Note and in this Mortgage. If I sell or transfer the Property and each of the conditions in (A), (B), (C) and (D) of this Paragraph 19 is satisfied, Lender will release me from all of my obligations under the Note and under this Mortgage.<br><br>If I sell or transfer the Property and the conditions in (A), (B), (C) and (D) of this Paragraph 19 are not satisfied, I will still be fully obligated under the Note and under this Mortgage and Lender may require Immediate Payment in Full, as that phrase is defined in Paragraph 20 below. However, Lender will not have the right to require Immediate Payment in Full as a result of certain transfers. Those transfers are: (i) the creation of liens or other claims against the Property that are inferior to this Mortgage; (ii) a transfer of rights in household appliances, to a person who provides me with the money to buy those appliances, in order to protect that person against possible losses; (iii) a transfer of the Property to surviving co-owners, following the death of a co-owner, when the transfer is automatic according to law; (iv) leasing the Property for a term of three years or less, as long as the lease does not include an option to buy.<br><br>If Lender requires Immediate Payment in Full under this Paragraph 19, Lender will send me, in the manner described in Paragraph 14 above, a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or, if it is not mailed, the date the notice is delivered. If I do not |

MTGE13294 PAGE570

make the required payment during that period, Lender may bring a lawsuit for "foreclosure and sale" under Paragraph 20 below without giving me any further notice or demand for payment. (See Paragraph 20 for a definition of "foreclosure and sale.")

**20. Lender's Rights If Borrower Fails To Keep Promises And Agreements**

If Lender requires Immediate Payment In Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and to have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law.

Lender may require Immediate Payment In Full under this Paragraph 20 only if all of the following conditions are met:

(A) I fail to keep any promise or agreement made in this Mortgage, including the promises to pay when due the amounts that I owe to Lender under the Note and under this Mortgage; and

(B) Lender sends to me, in the manner described in Paragraph 14 above, a notice that states:

(i) The promise or agreement that I failed to keep;
(ii) The action that I must take to correct that failure;
(iii) A date by which I must correct the failure. That date must be at least 30 days from the date on which the notice is mailed to me, or, if it is not mailed, from the date on which it is delivered to me;
(iv) That if I do not correct the failure by the date stated in the notice, I will be in default and Lender may require Immediate Payment In Full, and Lender or another person may acquire the Property by means of foreclosure and sale;
(v) That I may speak with a named representative of Lender to discuss any questions which I have about the things stated in the notice;
(vi) That if I meet the conditions stated in Paragraph 21 below, I will have the right to have any lawsuit for foreclosure and sale discontinued and to have the Note and this Mortgage remain in full effect as if Immediate Payment In Full had never been required; and
(vii) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Mortgage, and to present any other defenses that I may have; and

(C) I do not correct the failure stated in the notice from Lender by the date stated in that notice.

**21. Borrower's Right To Have Lender's Lawsuit For Foreclosure And Sale Discontinued**

Even if Lender has required Immediate Payment In Full, I may have the right to have discontinued any lawsuit brought by Lender for foreclosure and sale or for other enforcement of this Mortgage. I will have this right at any time before a judgment has been entered enforcing this Mortgage if I meet the following conditions:

(A) I pay to Lender the full amount that would have been due under this Mortgage and the Note if Lender had not required Immediate Payment In Full; and

(B) I correct my failure to keep any of my other promises or agreements made in this Mortgage; and

(C) I pay all of Lender's reasonable expenses in enforcing this Mortgage including, for example, reasonable attorneys' fees; and

(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Mortgage, and my obligations under the Note and under this Mortgage continue unchanged.

If I fulfill all of the conditions in this Paragraph 21, then the Note and this Mortgage will remain in full effect as if Immediate Payment In Full had never been required.

**22. Lender's Rights To Rental Payments From The Property And To Take Possession Of The Property**

As additional protection for Lender, I give to Lender all of my rights to any rental payments from the Property. However, until Lender requires Immediate Payment In Full under Paragraph 19 or 20 above, or until I abandon the Property, I have the right to collect and keep those rental payments as they become due. I have not given any of my rights to rental payments from the Property to anyone else, and I will not do so without Lender's consent in writing.

If Lender requires Immediate Payment In Full under Paragraph 19 or 20 above, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter on and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change leases. I agree that if Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 22, the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Mortgage.

## RIDER ATTACHED TO AND FORMING PART OF MORTGAGE TO CITIBANK, N.A.

Type of Loan: [X] Purchase Money Mortgage

[ ] Refinance

MADE BY _____ AARON FISCHMAN AND NINA FISCHMAN _____

DATED _____ OCTOBER 17, 1989

**26. Agreements About Conflicting Provisions In The Mortgage And This Rider**

This Rider is a writing attached to the Mortgage and the provisions contained in this Rider are part of the mortgage. I agree that if the provisions that are contained in this Rider are in conflict with the terms in the printed Mortgage and the Note, then the provisions of the Rider will control over the provisions in the printed Mortgage and the Note. If the Mortgage is assigned by the Lender, all or any portion of this Rider may, at the option of the assignee, be deemed null and void.

**27. Lender's Rights If Borrower Fails To Keep Promises And Agreements**

The provisions of this Paragraph 27 shall supercede and take the place of the provisions of Paragraph 20 of the Mortgage:

If any of the events stated in subparagraphs (A) through (I) occur, Lender may require that I pay immediately the entire amount then unpaid under the Note and/or secured by the Mortgage or this Rider. Lender may do this without making a further demand for payment. This requirement will be called "Immediate Payment In Full."

If Lender requires Immediate Payment In Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and to have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law.

Lender may require Immediate Payment In Full if:

(A)  I fail to pay any amounts I owe to Lender under the Note, the Mortgage and/or this Rider within fifteen (15) days after the due date for such payments; or

(B)  I fail to keep any other promise or agreement made in the Mortgage and/or this Rider; or

(C)  without Lender's prior written consent (i) I assign the rents from all or any part of the Property, or (ii) I receive or collect rent from any tenant of all or any part of the Property for more than one month in advance; or

(D)  I fail to comply with any requirement, order or notice of a violation of a law or ordinance within three (3) months after the requirement, order or notice is issued by a governmental department claiming authority over the Property; or

(E)  Lender applies to two or more fire insurance companies lawfully doing business in the State of New York and these insurance companies refuse to issue policies insuring the buildings on the Property; or

(F)  any fixture or article of personal property that is covered by the Mortgage is wholly or partially removed, demolished or destroyed. A "fixture" is personal property that is attached to land or a building. However, there cannot be a demand for an Immediate Payment In Full if (i) the personal property or fixture that is removed, demolished or destroyed is promptly replaced by similar property that is at least equal in quality and condition, and (ii) I am the sole owner of this replacement property and it is free from any lien or claim; or

(G)  any law is passed (i) deducting from the value of the land for the purpose of taxation any lien on the land or (ii) changing in any way the taxation of mortgages or debts secured by a mortgage for state or local purposes, and thirty (30) days have elapsed after passage of any such law; or

(H)  I use the Property for any unlawful purpose, or if the Property is used for any purpose by which the risk of fire or other hazard is increased, unless Lender gives written consent prior to these unauthorized uses; or

(I)  a lawsuit is begun for foreclosure and sale or any other action or proceeding is begun to collect any lien that is inferior to the Mortgage.



**28. Lender's Rights According To Section 254 Of The New York Real Property Law**

Lender will be entitled to certain rights and advantages according to a law known as Section 254 of the New York Real Property Law ("Section 254"). The provisions of the Mortgage and this Rider will be construed as provided in Section 254, except that Section 254 will not apply to Paragraph 5 of the Mortgage or Paragraph 38 of this Rider. All of Lender's rights and advantages as set forth in the Mortgage or this Rider are supplemental to, and do not replace, any of Lender's rights under Section 254. None of Lender's rights shall be to the exclusion of any other rights, and nothing Lender does shall be construed to be an election to enforce any one right to the exclusion of any other rights.

**29. Agreements About Lender's Rights With Regard To A Foreclosure Search, Appointment Of A Receiver And A Foreclosure And Sale**

If I do not keep my promises and agreements made in the Mortgage or this Rider, Lender may obtain a "foreclosure search" from a title insurance company. If I correct my failure to keep my promises and agreements before a lawsuit for foreclosure and sale begins, I agree to pay the cost of the foreclosure search together with any other sums required to cure my failure.

If Lender, or any person who takes over Lender's rights or obligations under the Mortgage, begins a lawsuit for foreclosure and sale, then Lender is entitled to have a receiver appointed by the court. This receiver may be appointed without Lender giving notice to me. I give Lender the right to have a receiver appointed, whether or not the value of the Property is worth more than the amount I owe on the Mortgage or this Rider.

If there is a foreclosure and sale, I agree that all of the Property or any part of the Property this is affected by the Mortgage or this Rider may be sold together as one unit.

**30. Borrower's Obligations To Deliver Receipts To Lender; Lender's Right To Make Payments**

I will deliver to Lender any receipts I receive for the payment of all taxes, assessments, water rates and sewer rents within ten (10) days after Lender requests these receipts. If I do not deliver these receipts after Lender's request, Lender may make these necessary payments as provided in Paragraph 7 of the Mortgage.

**31. Borrower's Obligation To Make Statement Of Amount Due On Mortgage And If Any Deductions Or Defenses Exist Against The Amount Due On Mortgage**

I will furnish a written statement of the amount due on the Mortgage and this Rider and whether any deductions or defenses exist against the amount due on the Mortgage and this Rider upon the request of Lender. If the Lender makes the request in person, then I will furnish the statement within five (5) days. If Lender makes the request by mail, I will furnish the statement within eight (8) days. I will duly acknowledge any statement I make under this Paragraph. An "acknowledgement" is a formal declaration before a notary public or other authorized official by the person who signs the statement.

**32. Lender's Rights If There Is A Change Of Ownership Of The Property**

The provisions of this Paragraph 32 shall supercede and take the place of the provisions of Paragraph 19 of the Mortgage:

If I sell or transfer the Property, I will still be fully obligated under the Note and under the Mortgage and Lender may require Immediate Payment In Full, as that phrase is defined in Paragraph 27 of this Rider. However, Lender will not have the right to request Immediate Payment In Full as a result of certain transfers. Those transfers are: (i) the creation of liens or other claims against the Property that are inferior to the Mortgage; (ii) a transfer of rights in household appliances, to a person who provides me with the money to buy those appliances, in order to protect that person against possible losses; and (iii) a transfer of the Property to surviving co-owners, following the death of a co-owner when the transfer is automatic according to law.

If Lender requires Immediate Payment In Full under this Paragraph 32, Lender will send me, in the manner described in Paragraph 14 of the Mortgage, a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or, if it is not mailed, on the date the notice is delivered. If I do not make the required payment during that period, Lender may bring a lawsuit for "foreclosure and sale" under Paragraph 27 of this Rider without giving me any further notice or demand for payment. (See Paragraph 27 of this Rider for a definition of "foreclosure and sale.")

**33. Principal Residence**

I will reside in the Property for at least six (6) months of every calendar year.

**34. Borrower's Obligation To Pay Interest If Lender Demands Immediate Payment In Full**

If Lender demands Immediate Payment In Full, interest will be payable from the date Lender makes such demand at the applicable rate stated in the Note (or in a modification of the Note, if any), or at the highest rate of interest the law then allows, if such rate is higher than the applicable rate stated in the Note.

**35. Borrower's Obligation To Pay A Late Charge If Borrower's Payment Is Overdue**

If any payment(s) becomes overdue and has not been received by Lender within fifteen (15) days from the due date, a late charge may be charged by Lender. The late charge will be an amount equal to two (2%) percent of such payment that is overdue. The late charge may be deducted from my funds (or the funds of any subsequent owner of the Property). The late charge will be a lien on the Property secured by the Mortgage.



MTGE 13294 PAGE 573

| 36. | Agreements About Which Persons Are Bound By The Promises In This Mortgage | The Mortgage and this Rider may not be changed or ended orally. The promises contained in the Mortgage and this Rider will run with the land and bind and take effect for me and any person who takes over my rights or obligations and all persons who may have an interest in the Property. The promises will also bind and take effect for the benefit of Lender and any person who takes over Lender's rights and obligations under the Mortgage and this Rider. A promise that "runs with the land" is a promise under which the liability for performance or the right to performance passes to a subsequent owner of the land or any person who obtains rights and obligations with respect to the land. |
|---|---|---|
| 37. | Agreement About Lender's Obligation To Satisfy Or Discharge Mortgage When Paid In Full | When Lender has been paid all amounts due under the Note, the Mortgage and this Rider, Lender will discharge the Mortgage by executing a certificate stating that the Mortgage has been satisfied. If I prepare the certificate and present it to Lender, I will not be required to pay Lender for the discharge. If I ask Lender to prepare the certificate, I will pay Lender's counsel a reasonable fee of not less than $50 for the preparation of the certificate. I will pay all costs of recording the discharge in the proper official records. |
| 38. | Hazard Insurance Proceeds | If any hazard insurance proceeds are received because of damage to the Property, Lender may use the proceeds to repay all amounts I owe under the Note, the Mortgage, or this Rider; or Lender may use or make available to me all or part of the proceeds to repair the damage to the Property; or I may use the proceeds for any other purpose Lender approves of (but Lender does not have to see to the proper use of any proceeds paid over to me). In the event of loss or damage to the Property, if I do not promptly make proof of loss to the insurance company, Lender is hereby appointed my attorney-in-fact with full and absolute authority to (i) make such proof of loss, (ii) compromise and settle any claim for loss, and (iii) give releases or acquittances to the insurance company in connection with such settlement of any claim for insurance proceeds. Lender's appointment as my attorney-in-fact is irrevocable and coupled with an interest, with full power of substitution, and shall not be affected by my subsequent disability or incompetence. Each insurance company concerned is hereby authorized and directed to pay such proceeds directly to Lender instead of jointly to me and Lender. If hazard insurance proceeds are used to repay the sums I owe under the Note, the Mortgage, or this Rider, such proceeds shall be applied to those installments of principal last coming due. |
| 39. | Condemnation Proceeds | If any proceeds are payable with respect to the Property because of an exercise of eminent domain, condemnation, or other taking, the right to such proceeds and the use of such proceeds shall be governed by, and applied in accordance with, the provisions of Paragraph 38 of this Rider as if such proceeds were hazard insurance proceeds. |
| 40. | Lender's Right Of Set-Off | If I am in default under the Note, the Mortgage or this Rider, in addition to any other rights that Lender has under the Note, the Mortgage or this Rider, Lender shall have such rights of set-off as may be permitted by applicable law. |
| 41. | Warranty Of Title | The following sentence contained on page 2 of the Mortgage is hereby deleted: |

I promise that except for the "exceptions" listed in any title insurance policy which insures Lender's rights in the Property: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property.

The following sentence is hereby added to and shall take the place of the foregoing:

I promise that except for the "exceptions" listed in the title report or title abstract for the Property, updated to the date of the Mortgage, which has been delivered to Lender; (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; (C) there are no outstanding claims or charges against the Property; and (D) the Mortgage constitutes a valid first lien on the Property.

| 42. | No Oral Modifications Of The Mortgage | The Mortgage and this Rider may not be changed or ended orally. |
|---|---|---|
| 43. | Purchase Money Mortgage | If the Type of Loan is designated on page 1 as a "purchase money mortgage," that means this Mortgage was made by the purchaser of property to obtain all or a part of the money required to purchase the Property. |
| 44. | Governing Law | The Mortgage and this Rider shall be governed by federal law; where federal law is silent, the laws of New York will be applied. In the event of a conflict between any provision of the Mortgage or this Rider and any applicable federal statute, law or regulation or New York statute, law or regulation, to the extent of such conflict applicable federal law shall govern, or if federal law is silent, applicable New York law shall govern. In such event, the conflicting provision of the Mortgage or this Rider shall be without effect. All other provisions of the Mortgage and this Rider will remain fully effective and enforceable. The Note shall be construed in accordance with the applicable provisions of the Note. |

AARON FISCHMAN _____ Borrower _____ Borrower

NINA FISCHMAN _____ Borrower _____ Borrower

If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 22, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the amount that I owe to Lender under the Note and under this Mortgage. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees, and the cost of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

**Paragraph 23 has been intentionally deleted.**

**24.** *Lender's Obligation To Discharge This Mortgage When The Note And This Mortgage Are Paid In Full* — When Lender has been paid all amounts due under the Note and under this Mortgage, Lender will discharge this Mortgage by delivering a certificate that this Mortgage has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

**25.** *Agreements About New York Lien Law* — I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Mortgage is recorded in the proper official records, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts, which I receive and which I have a right to receive from Lender under the Note as a "trust fund", and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that I have a special responsibility under the law to use the amounts in the manner described in this Paragraph 25.

By signing this Mortgage I agree to all of the above.

Witnesses:

_____

_____    AARON FISCHMAN _____ Borrower

_____    NINA FISCHMAN _____ Borrower

_____    _____ Borrower

_____    _____ Borrower

STATE of _____ NEW YORK _____ )
: ss.:
COUNTY of _____ NASSAU _____ )

On this ___17TH___ day of ___OCTOBER___ , 19 _89_ , before me personally came _____

AARON FISCHMAN AND NINA FISCHMAN

_____

to me known and known to me to be the individual(s) described in and who executed the foregoing instrument and, ___They___ duly acknowledged to that ___They___ executed the same.

_____
Notary Public

SIDNEY JACO
Notary Public, State of New York
No.
Qualified in Nassau County
Commission Expires Dec. 31, 19 _90_

Item 267343 (NTPL 401 (L) Rev. 5-88) Pkg. 50 Printing of 4-89

PAGE 9 OF 9

**(Space Below This Line Reserved For Lender and Recorder)**

Loan No. _____

Title No. _____

AARON FISCHMAN
NINA FISCHMAN
to
CITIBANK, N.A.

Town/Village: HEMPSTEAD

County: NASSAU

State of New York

Section: 39

Block: 192

Lot(s): 218

RECORD AND RETURN TO:
CITICORP MORTGAGE, INC.
P.O. BOX 790034
MAIL STATION 434C
ST. LOUIS, MO 63134

SEC. 39
BLK 192
LOT 218

MTGE 13294 PAGE 575

RECORDED

DEC 2 17 PM '89

HAROLD H. MCCONNELL
COUNTY CLERK
NASSAU COUNTY

Recorded At The Request Of
Lawyers National Abstract Corp.
189 Montague Street Brooklyn, NY 11201
(718) 935-1833

160

SEC 39
BLK. 192
LOT 318

MORTGAGE REC. TAX
BASIC          $ 1428.00
ADD'L          $  689.00
SPEC           $  714.00
TOTAL          $ 2831.00

NASSAU COUNTY CLERK

RECEIVED       $ 2831.00

DEC 1 - 1989

CITICORP MORTGAGE, INC
P.O. BOX 790034
MAIL STA. 434C
ST. LOUIS, MO. 63134

Block # 192
Lot # 218
Loan # ███████

"This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market."

Section # 39
Pool # ██████

NEW YORK

## ASSIGNMENT OF MORTGAGE

KNOW THAT

CITICORP MORTGAGE, INC., F/K/A CITICORP HOMEOWNERS, INC., AND successor in interest to Citicorp Homeowners Services, Inc., A Delaware corporation and having its principal office at: 670 Mason Ridge Center Drive, St. Louis, MO 63141 assignor in consideration of One and no/100 Dollars, ($1.00) paid by: SECURITY PACIFIC NATIONAL TRUST COMPANY (NEW YORK), AS TRUSTEE, 2 RECTOR STREET, CORPORATE TRUST DIVISION, NEW YORK, NEW YORK 10006, Assignee, hereby assigns unto the assignee, a certain mortgage made by AARON FISCHMAN AND NINA FISCHMAN to CITIBANK, N.A., given to secure payment of the sum of $285,600.00 (TWO HUNDRED EIGHTY FIVE THOUSAND SIX HUNDRED AND 00/100) Dollars and interest, dated OCTOBER 17, 1989, recorded on DECEMBER 1, 1989, in the office of the Clerk of the County of NASSAU in Liber 13294 of mortgages, at page 563, document no.████████ covering premises: SEE LEGAL DESCRIPTION ATTACHED

SOLD BY CITICORP MORTGAGE, INC. AS POWER OF ATTORNEY FOR CITIBANK N.A., AS RECORDED ON 8-9-88 IN LIBER 9929 AND PAGE 771 together with the bond or obligation described in said mortgage, and the moneys due to grow due thereon with interest.

TO HAVE AND TO HOLD, the same unto the assignee, and to the successors, legal representatives and assigns of the assignee forever.
AND the assignor covenant that there is now owing upon said mortgage, without offset or defense of any kind, the principal sum of $283,869.79 (TWO HUNDRED EIGHTY THREE THOUSAND EIGHT HUNDRED SIXTY NINE AND 79/100) Dollars, with interest thereon at TEN AND SEVEN-EIGHTHS per centum per annum from OCTOBER 17, 1989.

IN WITNESS WHEREOF, the party of the first part has caused its corporate seal to be hereunto affixed, and these presents to be signed by its duly authorized officer, March 7, 1991.

CITICORP MORTGAGE, INC.

BY: _Kathleen Rehder_
KATHLEEN REHDER,
MORTGAGE OFFICER
8837 HEATHER LANE
HAZELWOOD, MO 63042

STATE OF MISSOURI  )
                   ) SS
COUNTY OF ST. LOUIS )

On March 7, 1991, before me personally came KATHLEEN REHDER to me personally known who, being by me duly sworn, did depose and say the she resides AT 8837 HEATHER LANE, HAZELWOOD, MO 63042, IN ST. LOUIS COUNTY, MO, that she is the MORTGAGE OFFICER of CITICORP MORTGAGE, INC., the corporation described in, and which executed, the within Instrument that she knows the seal of said corporation; that the seal affixed to said Instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said Corporation; and that she signed her name thereto by like order.

_____
NOTARY PUBLIC
MY COMMISSION EXPIRES:

MARY J. KAUP
NOTARY PUBLIC STATE OF MISSOURI
COUNTY OF ST. LOUIS
MY COMMISSION EXPIRES FEB. 8, 1995

CDD/NY13

RECORD AND RETURN TO:
CITICORP MORTGAGE
P.O. BOX 790034
ST. LOUIS MO ████████

APR 11 1991

Lotted __ Ver __ Post __ Block 192 Ver __ Lot 218
Section 39

MTGE 13760 PAGE 557

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Incorporated Village of Cedarhurst, Town of Hempstead, County of Nassau and State of New York, known and designated as Lots Numbers 36, 37 and 38 and the northerly one-half of Lot Number 35 in Block 58 as shown and designated on a certain map entitled, "Map of Lord Estates at Cedarhurst-Woodmere, Nassau County, N.Y., Surveyed March 1926 by Vandewater & Lapp, Engineers and Surveyors, Far Rockaway, N.Y.," and filed in the office of the Clerk of the County of Nassau on May 22, 1926 under ███████████████ and more particularly bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Carlyle Street with the easterly side of Edward Avenue, running thence easterly and along the southerly side of Carlyle Street, 100 feet;

THENCE southerly and parallel with the easterly side of Edward Avenue 70 feet;

THENCE westerly and parallel with the southerly side of Carlyle Street, 100 feet to the easterly side of Edward Avenue;

THENCE northerly and along the easterly side of Edward Avenue, 70 feet to the corner, the point or place of BEGINNING.

LEGIBILITY
POOR FOR
MICROFILM

RECORDED

HAROLD W. McCONNELL
COUNTY CLERK
NASSAU COUNTY

SUBJECT TO APPROVAL

RECEIVED
HAROLD W. McCONNELL
NASSAU COUNTY CLERK

MTGE 13760 PAGE 559



Nassau County Clerk
RECORDS OFFICE
RECORDING PAGE

Type of Instrument: Assign Mortgage

Control No: ▮▮▮▮▮▮▮

BANKERS TRUST CO

CITIBANK NA

Recorded: 11/01/1999
At:        11:34:17 AM
In Liber: ▮▮▮▮▮
Of: Mortgage Book (M)
From Page:   0427
Through Page: 0428

Refers to Liber: ▮▮▮▮▮
Of: Mortgage Book (M)
Page: 0563

| Location: | Section: | Block: | Lot: | Unit: |
|---|---|---|---|---|
| Hempstead (2820) | 00000039 | 00192-00 | 00218 | |

EXAMINED AND CHARGED AS FOLLOWS:

Mort Amount    $         .00

Received The Following Fees For Above Instrument

                    Exempt                         Exempt

| Recording | $ | 21.00 | NO | | | |
| Add'l Fees | | | | State Fee | $ | 4.75 NO |
| St/Fee Cty | $ | .25 | NO | | | |

Fees
Paid:          $      26.00

THIS PAGE IS A PART OF THE INSTRUMENT

Karen V. Murphy
County Clerk, Nassau County



LEGIBILITY ~~~~
FOR MICROFILM

CMI

"This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market."



P.O. BOX 79002█
ST. LOUIS, MO 63179-0021
CMI ACCOUNT█
NEW YORK█
**BH**

CITICORP MORTGAGE, INC.
P.O. BOX 790021

ST. LOUIS, MO 63179-0021

## ASSIGNMENT OF MORTGAGE

KNOW THAT Citicorp Mortgage, Inc.,.ATTORNEY IN FACT FOR BANKERS TRUST COMPANY AS SUCCESSOR TO BANK AMERICA NATIONAL TRUST COMPANY, F/K/A SECURITY PACIFIC NATIONAL TRUST COMPANY (NEW YORK) AS TRUSTEE, having it principal office at 15851 Clayton Road, St. Louis, Missouri 63011, assignor, in consideration of $1.00 (one dollar), paid by **CITIBANK, N.A.** as their interest may appear, the Assignee, hereby assigns unto the assignee, Mortgage dated OCTOBER 17, 1989 made by AARON FISCHMAN AND NINA FISCHMAN to Citibank, N.A. in the principal sum of $ 285,600.00 (TWO HUNDRED EIGHTY FIVE THOUSAND SIX HUNDRED AND 00/100) and recorded on DECEMBER 1, 1989 in Liber/Reel 13294, page 563, in the Office of the NASSAU County Recorder of the State of New York, covering premises known as 703 CARLYLE STREET, WOODMERE, NEW YORK 11598 and more particularly described in said Mortgage;

**Section 39 , Block 192, Lot 218, County NASSAU**
**which Mortgage has not been assigned of record.**
Assigned to Security Pacific National Trust Company (New York) on MARCH 7, 1991 recorded on APRIL 15, 1991 in book 13760 at page 557.

TOGETHER with the Bond or Note or obligation described in said Mortgage, and the moneys due and grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the Assignee and to the successors, legal representatives and assigns of the Assignee forever. This Assignment is made to and accepted by the Assignee without any warranty or representation on the part of the Assignor and without recourse to the Assignor in any event whatsoever.

The word "Assignor" or "Assignee" shall be construed as if it read "Assignors" or "Assignees" whenever he sense of this instrument so requires.

IN WITNESS WHEREOF, the Assignor has duly executed the Assignment On July 23, 1999

CITICORP MORTGAGE, INC.
BY: 
KATHLEEN REHDER
ASSISTANT SECRETARY

STATE OF MISSOURI )
                                  ) SS
COUNTY OF ST. LOUIS )

On July 23, 1999, before me personally came KATHLEEN REHDER to me personally known who, being by me duly sworn, did depose and say that he/she resides AT 15851 CLAYTON ROAD, BALLWIN, MO 63011, in ST. LOUIS COUNTY, MO. that he/she is the ASSISTANT SECRETARY of CITICORP MORTGAGE, INC., ATTORNEY IN FACT FOR BANKERS TRUST COMPANY AS SUCCESSOR TO BANKAMERICA NATIONAL TRUST COMPANY. F/K/A SECURITY PACIFIC NATIONAL TRUST COMPANY (NEW YORK) AS TRUSTEE by agreement recorded on 01-02-97 in liber 10732 page 521. and that he executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the seal of said corporation; that is was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

NOTARY PUBLIC

GARI BROWN
Notary Public - Notary Seal
STATE OF MISSOURI
ST. LOUIS COUNTY
MY COMMISSION EXP. MAY 12,2002



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 04-21-2014
Recorded Time: 3:42:01 p

Liber Book: M 39642
Pages From: 34
To: 35

Record and Return To:
M E WILEMAN
2860 EXCHANGE BLVD # 100
SOUTHLAKE, TX 76092

Control
Number: ▮▮▮
Ref #:
Doc Type: M23 ASSIGN MORTGAGE

Refers to: Book: M 13294 Page: 563

Location:                    Section Block    Lot    Unit
HEMPSTEAD (2820)             0039    00192-00 00218

|  | Taxes Total | .00 |
| --- | --- | --- |
|  | Recording Totals | 200.00 |
|  | Total Payment | 200.00 |

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
MAUREEN O'CONNELL
COUNTY CLERK

RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

**RECORD FIRST**

**Assignment of Mortgage**

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, CITIBANK, N.A. 4050 REGENT BLVD, MAIL STOP N2A-222,
IRVING, TX 75063 (Assignor) by these presents does assign, and set over, without recourse, to CITIMORTGAGE,
INC. 4050 REGENT BLVD, MS N2A-222, IRVING, TX 75063 (Assignee) the described mortgage with all
interest, all liens, any rights due or to become due thereon, executed by **AARON FISCHMAN AND NINA
FISCHMAN** to CITIBANK, N.A.. Said mortgage Dated: 10/17/1989 is recorded in the State of NY, County of
Nassau on 12/1/1989, as Liber 13294 Page 563 AMOUNT: $ 285,600.00    SECTION 39 BLOCK 192 LOT 218
Property Address: 703 CARLYLE STREET, WOODMERE, NY 11598

This Assignment is not subject to the requirements of Section 275 of the Real Property law, because it is an
assignment within the secondary mortgage market.

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper
officer. Executed on: 3/26/14
CITIBANK, N.A.

By:

Jason LaRocca, Assistant Vice President
State of Maryland, County of Washington
    On 3/26/14, before me, the undersigned, personally appeared Jason LaRocca, Assistant Vice President,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance
before the undersigned in the County of Washington, State of Maryland

Notary public: Sharon L Kline
My commission expires: 8-2-2017

SHARON L. KLINE
Washington County
State of Maryland
My Commission Expires Aug. 2, 2017

NY  Nassau



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

**Recorded Date:** 04-21-2014
**Recorded Time:** 3:42:01 p

**Liber Book:** M 39642
**Pages From:** 36
**To:** 37

**Record and Return To:**
M E WILEMAN
2860 EXCHANGE BLVD # 100
SOUTHLAKE, TX 76092

**Control Number:** ▮▮▮
**Ref #:**
**Doc Type:** ▮▮ ASSIGN MORTGAGE

**Refers to:** Book: M 13294 Page: 563

**Location:**
HEMPSTEAD (2820)

**Section** 0039 **Block** 00192-00 **Lot** 00218 **Unit**

**Taxes Total** .00
**Recording Totals** 200.00
**Total Payment** 200.00

▮▮▮▮

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
MAUREEN O'CONNELL
COUNTY CLERK

RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100        ₂₃    **3RD SEC. ND**
Southlake, TX 76092     **Assignment of Mortgage**     Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, CITIMORTGAGE, INC. 4050 REGENT BLVD,
IRVING, TX 75063 (Assignor) by these presents does assign, and set over, without recourse, to PALISADES
MORTGAGE ACQUISITION COMPANY, LLC 1063 Post Road, 2nd Floor, Darien, CT 06820 (Assignee) the
described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **AARON
FISCHMAN AND NINA FISCHMAN** to CITIBANK, N.A.. Said mortgage Dated: 10/17/1989 is recorded in the
State of NY, County of Nassau on 12/1/1989, as Liber 13294 Page 563 AMOUNT: $ 285,600.00    SECTION 39
BLOCK 192 LOT 218 Property Address: 703 CARLYLE STREET, WOODMERE, NY 11598

This Assignment is not subject to the requirements of Section 275 of the Real Property law, because it is an
assignment within the secondary mortgage market.

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper
officer. Executed on: February 27, 2014
CITIMORTGAGE, INC.

By:

Melanie A. Arndt, Vice President
State of Texas, County of Tarrant
     On February 27, 2014, before me, the undersigned, personally appeared Melanie A. Arndt, Vice President,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance
before the undersigned in the County of Tarrant, State of Texas.

Notary public, Julie Bacon
My commission expires: November 30, 2014

JULIE BACON
MY COMMISSION EXPIRES
November 30, 2014

NY   Nassau



## Nassau County
## Maureen OConnell
## County Clerk
## Mineola, NY 11501



### Instrument Number: 2017- 00079423
### As
### M23 - ASSIGN MORTGAGE

Recorded On:  August 14, 2017
Parties:  CITIBANK NA

TO  CITICORP MORTGAGE INC

Recorded By:  CT LIEN SOLUTIONS

**Billable Pages: 2**

**Num Of Pages: 3**

Comment:

### ** Examined and Charged as Follows: **

ASSIGN MORTGAGE          55.00      Blocks - Mortgages - $300       300.00

Recording Charge:      **355.00**

**Property Description:**

| Line | Section | Block | Lot | Unit | Town Name |
|------|---------|-------|-----|------|-----------|
| 1 | 39 | 192 | 218 | | HEMPSTEAD |

### ** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For:  Nassau County, NY

**File Information:**
Document Number:
Receipt Number:
Recorded Date/Time:  August 14, 2017 12:05:38P
Book-Vol/Pg:  Bk-M Vl-42306 Pg-601
Cashier / Station:

**Record and Return To:**
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE CA 91209-9071

**County Clerk Maureen O'Connell**

Prepared By:
CITIMORTGAGE, INC
STARLA DODSON
1000 TECHNOLOGY DRIVE, MS 321
O'FALLON , MO 63368-2240



## GAP ASSIGNMENT OF MORTGAGE

KNOW THAT Citibank, N.A. , with a mailing address of Current Beneficiary Address: 1000 Technology Drive, O'Fallon, MO, 63368 , ( Assignor ) in consideration of one dollar ($1.00) and other good and valuable consideration paid hereby assigns unto Citicorp Mortgage, Inc. F/K/A Citicorp Homeowners, Inc. and successor in interest to Citicorp Homeowners Services, Inc. , whose address is 670 Mason Ridge Center Drive, St. Louis, MO, 63141, its rights in a Mortgage bearing the date of 10/17/1989 executed by Aaron Fischman and Nina Fischman to Original Beneficiary Name: Citibank, N.A. , whose address is Original Beneficiary Address: 399 Park Avenue, New York, NY, 10043, given to secure payment of Loan Amount: $285,600.00 loan, with interest, and recorded in the Office of the Clerk of Nassau County on 12/01/1989 in Book, Volume, or Liber No: 13294 Page: 563 , covering Premises situated at Property Address: 703 Carlyle Street, Woodmere, NY, 11598, in Nassau County, State of New York, designated on the County tax map as Section: 39 Block No: 192 Lot: 218.

\*\*This Mortgage was assigned by Citicorp Mortgage, Inc. F/K/A Citicorp Homeowners, Inc. and
ⱥ successor in interest to Citicorp Homeowners Services, Inc. to Security Pacific National Trust Company, (New York) dated 01/02/1990 and recorded on 04/15/1991 in Book# 13760 and Page# 554.

\*\*This assignment is being recorded to correct a gap in the chain between the Mortgage from Aaron
ⱥ Fischman and Nina Fischman to Citbank, N.A. dated 10/17/1989 and recorded on 12/01/1989 in Book# 13294 and Page# 563 and Assignment from Citicorp Mortgage, Inc. F/K/A Citicorp Homeowners, Inc. and successor in interest to Citicorp Homeowners Services, Inc. to Security Pacific National Trust Company (New York) dated 01/02/1990 and recorded on 04/15/1991 in Book# 13760 and Page# 554.

Pursuant to Section 321 of the Real Property Law, said mortgage has not been further assigned.
Township: Hempstead

THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF SECTION 275 OF THE REAL PROPERTY LAW BECAUSE IT IS AN ASSIGNMENT WITHIN THE SECONDARY MORTGAGE MARKET.

IN WITNESS WHEREOF, THE ASSIGNOR HAS EXECUTED THIS ASSIGNMENT THIS
_____8-2-17_____ .

Citibank, N.A.
(the Assignor)
By: _____
Name : Sandra West
Title: Assistant Vice President

STATE OF **MISSOURI, ST. CHARLES COUNTY**

On _____ 8-2-17 _____ before me, the undersigned, a notary public in and for said state, personally appeared **Sandra West**, **Assistant Vice President** of **Citibank, N.A.** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public **Sheila Brooks**

SHEILA BROOKS
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires:
Commission Number

Commission Expires: 03/19/2020

# **** Electronically Filed Document ****

Instrument Number: 2017-92823

Recorded As: ███████ - ASSIGN MORT

Recorded On: September 15, 2017

Recorded At: 11:21:48 am          Receipt Number: ███████

Number of Pages: 5               Processed By: ███████

Book-VI/Pg: Bk-M  VI-42381  Pg-360

Total Rec Fee(s): $365.00

## ** Examined and Charged as Follows **

23 - ASSIGN MORTGAGE          $ 65.00     EX-Blocks - Mortgages - $300          $ 300.00

## Property Information:

| Section | Block | Lot | Unit | Town Name |
|---------|-------|-----|------|-----------|
| 39 | 192 | 218 | | HEMPSTEAD |

## ************THIS PAGE IS PART OF THE INSTRUMENT ************

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



*Maureen O'Connell*
**County Clerk Maureen O'Connell**

PREPARED BY: ████
WHEN RECORDED, RETURN TO:
RUSHMORE LOAN MANAGEMENT SERVICES LLC
15480 LAGUNA CANYON ROAD, SUITE 100
IRVINE CA 92618

## ASSIGNMENT OF MORTGAGE

LOAN #: ████████

**KNOW ALL MEN BY THESE PRESENTS, THAT:**

ASSIGNOR: **PALISADES MORTGAGE ACQUISITION COMPANY, LLC**

ASSIGNOR ADDRESS: **1063 POST ROAD, 2ND FLOOR, DARIEN, CT 06820**

**FOR AND IN CONSIDERATON OF THE SUM OF ONE DOLLAR AND OTHER GOOD AND VALUABLE CONSIDERATION, TO IT IN HAND PAID BY:**

ASSIGNEE: **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR PALISADES MORTGAGE LOAN TRUST, SERIES 2013-4**

ASSIGNEE ADDRESS: **500 DELAWARE AVENUE, 11TH FLOOR WILMINGTON, DE 19801**

AT OR BEFORE THE ENSEALING AND DELIVERY OF THESE PRESENTS, THE RECEIPT OF WHEREOF IS HEREBY ACKNOWLEDGED, HAS GRANTED, BARGAINED, SOLD, ASSIGNED, TRANSFERRED AND SET OVER, AND BY THESE PRESENTS DOES GRANT, BARGAIN, SELL, ASSIGN, TRANSFER AND SET OVER UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS ALL THAT CERTAIN MORTGAGE BEARING THE:

DATE: **10/17/1989**
ORIGINAL LOAN AMOUNT: **$285,600.00**
MORTGAGOR/BORROWER: **AARON FISCHMAN AND NINA FISCHMAN**
ORIGINAL MORTGAGEE/BENEFICIARY: **CITIBANK, N.A.**

**RECORDED IN** THE OFFICIAL REAL PROPERTY RECORDS OF **NASSAU** COUNTY, **NEW YORK** RECORDED: **12/01/1989** BOOK/VOLUME/LIBER: **13294** PAGE: **563** DOCUMENT: **N/A**

PROPERTY SUBJECT TO LIEN: **703 CARLYLE STREET, WOODMERE, NY 11598**
*SEC:39 BL:192 LOT:218*
**THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF SECTIONS 275 OF THE REAL PROPERTY LAW BECAUSE IT IS AN ASSIGMENT WITHIN THE SECONDARY MORTGAGE MARKET.**

TOGETHER WITH THE HEREDITAMENTS, AND PREMISES IN AND BY SAID MORTGAGE PARTICULARLY DESCRIBED AND GRANTED, OR MENTIONED AND THEREBY INTENDED TO BE SECURED AND ALL INCIDENTAL OR SUPPLEMENTAL DOCUMENTS, OR INSTRUMENTS, IF ANY, SECURED OR INTENDED TO BE SECURED THEREBY, AND ALL MONIES DUE AND TO GROW DUE THEREON, AND ALL ITS ESTATE, RIGHT, TITLE INTEREST, PROPERTY, CLAIM AND DEMAND IN AND TO THE SAME.

TO HAVE AND TO HOLD THE SAME UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS, TO ITS PROPER USE, BENEFIT AND BEHOOVE FOREVER, SUBJECT, NEVERTHELESS, TO TH EQUITY OF REDEPTION OF SAID MORTGAGOR IN SAID MORTGAGE NAMED, AND THE HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS AND ASSIGNS OF SAID MORTGAGOR THEREIN.

**IN WITNESS WHEREOF, THE SAID ASSIGNOR HAS EXECUTED BY ITS PROPER OFFICE THIS**

DATE: **JUL 0 6 2017**

PALISADES MORTGAGE ACQUISITION COMPANY, LLC BY RUSHMORE LOAN MANAGEMENT SERVICES, LLC ITS APPOINTED ATTORNEY IN FACT

BY: _____
NAME: **Drew Edwards**
TITLE: **Assistant Vice President**

**ACKNOWLEDGMENT**

State of    **Texas**       ) SS:
County of   **Dallas**

On   07|06|17    , before me the undersigned, a notary public in and for said state, personally appeared   **Drew Edwards**    ,   **Assistant Vice President**   , personally known to me to be the duly authorized person who executed the within instrument on behalf of Rushmore Loan Management Services LLC, and acknowledged/sworn to me that such   **Assistant Vice President**   . executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

Witness my hand and official seal.

_____
Notary Public in and for said County and State
My commission expires on: Sept 1, 2014

HENRY NEWBY
MY COMMISSION EXPIRES
September 1, 2018

**ASSIGNMENT CHAIN EXHIBIT**

Loan #: ▆▆▆▆▆

GAP

Assignor: CITIBANK, N.A.
Assignee: CITICORP MORTGAGE, INC., F/K/A CITICORP HOMEOWNERS, INC. AND SUCCESSOR IN
INTEREST TO CITICORP HOMEOWNERS SERVICES, INC. A DELAWARE CORPORATION
Date Recorded: 9/14/2017     Dated: 8/2/2017
County: NASSAU
Liber: 42306
Page: 601
Instrument: 2017-00079423

Assignor: CITICORP MORTGAGE, INC., F/K/A CITICORP HOMEOWNERS, INC. AND SUCCESSOR IN INTEREST
TO CITICORP HOMEOWNERS SERVICES, INC. A DELAWARE CORPORATION
Assignee: SECURITY PACIFIC NATIONAL TRUST COMPANY (NEW YORK), AS TRUSTEE
Date Recorded: 03/28/1991     Dated: 10/17/1989
County: NASSAU
Liber: 13760
Page: 557
Instrument: N/A

Assignor: CITICORP MORTGAGE, INC., ATTORNEY IN FACT FOR BANKERS TRUST COMPANY AS
SUCCESSOR TO BANK AMERICA NATIONAL TRUST COMPANY, F/K/A SECURITY PACIFIC NATIONAL TRUST
COMPANY (NEW YORK) AS TRUSTEE
Assignee: CITIBANK, N.A.
Date Recorded: 11/01/1999     Dated: 7/23/1999
County: NASSAU
Liber: 19964
Page: 0427
Instrument: N/A

Assignor: CITIBANK, N.A.
Assignee: CITIMORTGAGE, INC.     Dated: 3/26/2014
Date Recorded: 04/21/2014
County: NASSAU
Liber: 39642
Page: 34
Instrument: N/A

Assignor: CITIMORTGAGE, INC.
Assignee: PALISADES MORTGAGE ACQUISITION COMPANY, LLC
Date Recorded: 4/21/2014     Dated: 2/27/2014
County: NASSAU
Liber: 39642
Page: 36
Instrument: N/A

**CERTIFICATE OF CONFORMITY OF ACKNOWLEDGMENT**
**NYS RPL § 299-a**

STATE OF ___**Texas**___ :

COUNTY OF ___**Dallas**___ : ss.: :

The undersigned does hereby certify that he/she is an attorney at law duly admitted to practice in the State of ___**Texas**___ and residing at ___**Dallas**___ , State of ___**Texas**___ ; that he/she is a person duly qualified to make this certificate of conformity pursuant to Section 299-a of the Real Property Law of the State of New York; that he/she is fully acquainted with the laws of the State of ___**Texas**___ pertaining to the acknowledgment or proof of deeds of real property to be recorded therein; that the foregoing acknowledgment by _Drew Edwards_ named in the foregoing instrument taken before _Henry Newby_ , a notary public (or other officer ) was taken in the manner prescribed by such laws of the State of ___**Texas**___ , being the state in which it was taken; and that it duly conforms with such laws and is in all respects valid and effective in such state.

Witness my signature this __6th__ day of __July__ , 20__17__

_____

Attorney-at-law for the State of ~~Texas~~ **Texas** ,
residing in the State of _____

# **** Electronically Filed Document ****

Instrument Number: 2017-92824

Recorded As:  ███████ ASSIGN MORT

Recorded On: September 15, 2017

Recorded At: 11:22:35 am     Receipt Number: ███████

Number of Pages: 5     Processed By: ███████

Book-VI/Pg: Bk-M VI-42381 Pg-365

Total Rec Fee(s): $365.00

## ** Examined and Charged as Follows **

| 23 - ASSIGN MORTGAGE | $ 65.00 | EX-Blocks - Mortgages - $300 | $ 300.00 |
|---|---|---|---|

## Property Information:

| Section | Block | Lot | Unit | Town Name |
|---|---|---|---|---|
| 39 | 192 | 218 | | HEMPSTEAD |

---

## ***********THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

---



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

PREPARED BY: **RLMS**
WHEN RECORDED, RETURN TO:
RUSHMORE LOAN MANAGEMENT SERVICES LLC
15480 LAGUNA CANYON ROAD, SUITE 100
IRVINE CA 92618

## ASSIGNMENT OF MORTGAGE

LOAN # ▮▮▮▮▮▮▮

**KNOW ALL MEN BY THESE PRESENTS, THAT:**

ASSIGNOR: **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR PALISADES MORTGAGE LOAN TRUST, SERIES 2013-4**

ASSIGNOR ADDRESS: **500 DELAWARE AVENUE, 11TH FLOOR WILMINGTON, DE 19801**

**FOR AND IN CONSIDERATON OF THE SUM OF ONE DOLLAR AND OTHER GOOD AND VALUABLE CONSIDERATION, TO IT IN HAND PAID BY:**

ASSIGNEE: **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR RPMLT 2014-1**

ASSIGNEE ADDRESS: **500 DELAWARE AVENUE, 11TH FLOOR WILMINGTON, DE 19801**

AT OR BEFORE THE ENSEALING AND DELIVERY OF THESE PRESENTS, THE RECEIPT OF WHEREOF IS HEREBY ACKNOWLEDGED, HAS GRANTED, BARGAINED, SOLD, ASSIGNED, TRANSFERRED AND SET OVER, AND BY THESE PRESENTS DOES GRANT, BARGAIN, SELL, ASSIGN, TRANSFER AND SET OVER UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS ALL THAT CERTAIN MORTGAGE BEARING THE:

DATE: **10/17/1989**
ORIGINAL LOAN AMOUNT: **$285,600.00**
MORTGAGOR/BORROWER: **AARON FISCHMAN AND NINA FISCHMAN**
ORIGINAL MORTGAGEE/BENEFICIARY: **CITIBANK, N.A.**

**RECORDED IN** THE OFFICIAL REAL PROPERTY RECORDS OF **NASSAU COUNTY, NEW YORK**
RECORDED: **12/01/1989** BOOK/VOLUME/LIBER: **13294** PAGE: **563** DOCUMENT: **N/A**

PROPERTY SUBJECT TO LIEN: **703 CARLYLE STREET, WOODMERE, NY 11598**
SEC: 39 BL: 192 LOT: 215
**THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF SECTIONS 275 OF THE REAL PROPERTY LAW BECAUSE IT IS AN ASSIGMENT WITHIN THE SECONDARY MORTGAGE MARKET.**

TOGETHER WITH THE HEREDITAMENTS, AND PREMISES IN AND BY SAID MORTGAGE PARTICULARLY DESCRIBED AND GRANTED, OR MENTIONED AND THEREBY INTENDED TO BE SECURED AND ALL INCIDENTAL OR SUPPLEMENTAL DOCUMENTS, OR INSTRUMENTS, IF ANY, SECURED OR INTENDED TO BE SECURED THEREBY, AND ALL MONIES DUE AND TO GROW DUE THEREON, AND ALL ITS ESTATE, RIGHT, TITLE INTEREST, PROPERTY, CLAIM AND DEMAND IN AND TO THE SAME.

TO HAVE AND TO HOLD THE SAME UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS, TO ITS PROPER USE, BENEFIT AND BEHOOVE FOREVER, SUBJECT, NEVERTHELESS, TO TH EQUITY OF REDEPTION OF SAID MORTGAGOR IN SAID MORTGAGE NAMED, AND THE HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS AND ASSIGNS OF SAID MORTGAGOR THEREIN.

**IN WITNESS WHEREOF, THE SAID ASSIGNOR HAS EXECUTED BY ITS PROPER OFFICE THIS**

DATE: **JUL 0 6 2017**

CHRISTIANA TRUST, A DIVISION OF WILMINGTON
SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR
PALISADES MORTGAGE LOAN TRUST, SERIES
2013-4 BY RUSHMORE LOAN MANAGEMENT
SERVICES, LLC ITS APPOINTED ATTORNEY IN
FACT

BY: _____

NAME: **Drew Edwards**

TITLE: Assistant Vice President

## ACKNOWLEDGMENT

State of **Texas**
County of **Dallas**                              ) SS:

On ____01|06|17____, before me the undersigned, a notary public in and for said state, personally
appeared ___Drew Edwards___, ___Assistant Vice President___, personally known to
me to be the duly authorized person who executed the within instrument on behalf of Rushmore Loan
Management Services LLC, and acknowledged/sworn to me that such ___Assistant Vice President___,
executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

Witness my hand and official seal.

_____
Notary Public in and for said County and State

My commission expires on: ███████

HENRY NEWBY
MY COMMISSION EXPIRES
September 1, 2019

## ASSIGNMENT CHAIN EXHIBIT

Loan #: ▮▮▮▮▮▮

GAP
Assignor: CITIBANK, N.A.
Assignee: CITICORP MORTGAGE, INC., F/K/A CITICORP HOMEOWNERS, INC. AND SUCCESSOR IN
INTEREST TO CITICORP HOMEOWNERS SERVICES, INC. A DELAWARE CORPORATION
Date Recorded: 8/14/2017  *Dated : 8/2/2017*
County: NASSAU
Liber: 42306
Page: 601
Instrument: *2017-00079423*

Assignor: CITICORP MORTGAGE, INC., F/K/A CITICORP HOMEOWNERS, INC. AND SUCCESSOR IN INTEREST
TO CITICORP HOMEOWNERS SERVICES, INC. A DELAWARE CORPORATION
Assignee: SECURITY PACIFIC NATIONAL TRUST COMPANY (NEW YORK), AS TRUSTEE
Date Recorded: 3/28/1991 *Dated : 10/17/1989*
County: NASSAU
Liber: 13760
Page: 557
Instrument: N/A

Assignor: CITICORP MORTGAGE, INC., ATTORNEY IN FACT FOR BANKERS TRUST COMPANY AS
SUCCESSOR TO BANK AMERICA NATIONAL TRUST COMPANY, F/K/A SECURITY PACIFIC NATIONAL TRUST
COMPANY (NEW YORK) AS TRUSTEE
Assignee: CITIBANK, N.A.
Date Recorded: 11/01/1999  *Dated: 7/23/1999*
County: NASSAU
Liber: 19964
Page: 0427
Instrument: N/A

Assignor: CITIBANK, N.A.
Assignee: CITIMORTGAGE, INC  *Dated: 3/26/2014*
Date Recorded: 04/21/2014
County: NASSAU
Liber: 39642
Page: 34
Instrument: N/A

Assignor: CITIMORTGAGE, INC.
Assignee: PALISADES MORTGAGE ACQUISITION COMPANY, LLC
Date Recorded: 4/21/2014  *Dated: 2/27/2014*
County: NASSAU
Liber: 39642
Page: 36
Instrument: N/A

Assignor: PALISADES MORTGAGE ACQUISITION COMPANY, INC.
Assignee: CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTE
FOR PALISADES MORTGAGE LOAN TRUST, SERIES 2013-4
Date Recorded: TO BE RECORDED CONCURRENTLY
County: NASSAU
Liber: N/A
Page: N/A
Instrument: N/A

**CERTIFICATE OF CONFORMITY OF ACKNOWLEDGMENT**
**NYS RPL § 299-a**

STATE OF _____**Texas**_____ :
                                          : ss.:
COUNTY OF _____**Dallas**_____ :

The undersigned does hereby certify that he/she is an attorney at law duly admitted to practice in the State of _____**Texas**_____ and residing at _____**Dallas**_____, State of _____**Texas**_____; that he/she is a person duly qualified to make this certificate of conformity pursuant to Section 299-a of the Real Property Law of the State of New York; that he/she is fully acquainted with the laws of the State of _____**Texas**_____ pertaining to the acknowledgment or proof of deeds of real property to be recorded therein; that the foregoing acknowledgment by _*Drew Edwards*_ named in the foregoing instrument taken before _*Henry Newby*_, a notary public (or other officer ) was taken in the manner prescribed by such laws of the State of _____**Texas**_____, being the state in which it was taken; and that it duly conforms with such laws and is in all respects valid and effective in such state.

Witness my signature this ___*6th*___ day of _*July*_, 20_*17*_

_*[signature]*_
Attorney-at-law for the State of **Texas**,
residing in the State of _____**Texas**_____

# **** Electronically Filed Document ****

Instrument Number: 2017-92825

Recorded As:          ▮▮▮▮ - ASSIGN MORT

Recorded On:          September 15, 2017

Recorded At:          11:23:24 am               Receipt Number:

Number of Pages:      5                          Processed By:

Book-VI/Pg:           Bk-M  VI-42381  Pg-370

Total Rec Fee(s):     $365.00

## ** Examined and Charged as Follows **

23 - ASSIGN MORTGAGE        $ 65.00        EX-Blocks - Mortgages - $300        $ 300.00

## Property Information:

| Section | Block | Lot | Unit | Town Name |
|---------|-------|-----|------|-----------|
| 39      | 192   | 218 |      | HEMPSTEAD |

## ***********THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

PREPARED BY: RLMS
WHEN RECORDED, RETURN TO:
RUSHMORE LOAN MANAGEMENT SERVICES LLC
15480 LAGUNA CANYON ROAD, SUITE 100
IRVINE CA 92618

## ASSIGNMENT OF MORTGAGE

LOAN #: ▮▮▮▮▮▮▮

**KNOW ALL MEN BY THESE PRESENTS, THAT:**

ASSIGNOR:                                     **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A**
                                              **CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL**
                                              **CAPACITY, BUT SOLELY AS TRUSTEE FOR RPMLT**
                                              **2014-1**

ASSIGNOR ADDRESS:                             **500 DELAWARE AVENUE, 11TH FLOOR**
                                              **WILMINGTON, DE 19801**

**FOR AND IN CONSIDERATON OF THE SUM OF ONE DOLLAR AND OTHER GOOD AND VALUABLE CONSIDERATION, TO IT IN HAND PAID BY:**

ASSIGNEE:                                     **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT**
                                              **INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR**
                                              **RPMLT 2014-1 TRUST, SERIES 2014-1**

ASSIGNEE ADDRESS:                             **500 DELAWARE AVENUE, 11TH FLOOR**
                                              **WILMINGTON, DE 19801**

AT OR BEFORE THE ENSEALING AND DELIVERY OF THESE PRESENTS, THE RECEIPT OF WHEREOF IS HEREBY ACKNOWLEDGED, HAS GRANTED, BARGAINED, SOLD, ASSIGNED, TRANSFERRED AND SET OVER, AND BY THESE PRESENTS DOES GRANT, BARGAIN, SELL, ASSIGN, TRANSFER AND SET OVER UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS ALL THAT CERTAIN MORTGAGE BEARING THE:

DATE:                                         **10/17/1989**
ORIGINAL LOAN AMOUNT:                         **$285,600.00**
MORTGAGOR/BORROWER:                           **AARON FISCHMAN AND NINA FISCHMAN**
ORIGINAL MORTGAGEE/BENEFICIARY:               **CITIBANK, N.A.**

**RECORDED IN** THE OFFICIAL REAL PROPERTY RECORDS OF **NASSAU** COUNTY, **NEW YORK**
RECORDED: **12/01/1989** BOOK/VOLUME/LIBER: **13294** PAGE: **563** DOCUMENT: **N/A**

PROPERTY SUBJECT TO LIEN:                     **703 CARLYLE STREET, WOODMERE, NY 11598**
                                              *SEC: 39 BL: 192 LOT: 218*

**THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF SECTIONS 275 OF THE REAL PROPERTY LAW BECAUSE IT IS AN ASSIGMENT WITHIN THE SECONDARY MORTGAGE MARKET.**

TOGETHER WITH THE HEREDITAMENTS, AND PREMISES IN AND BY SAID MORTGAGE PARTICULARLY DESCRIBED AND GRANTED, OR MENTIONED AND THEREBY INTENDED TO BE SECURED AND ALL INCIDENTAL OR SUPPLEMENTAL DOCUMENTS, OR INSTRUMENTS, IF ANY, SECURED OR INTENDED TO BE SECURED THEREBY, AND ALL MONIES DUE AND TO GROW DUE THEREON, AND ALL ITS ESTATE, RIGHT, TITLE INTEREST, PROPERTY, CLAIM AND DEMAND IN AND TO THE SAME.

TO HAVE AND TO HOLD THE SAME UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS, TO ITS PROPER USE, BENEFIT AND BEHOOVE FOREVER, SUBJECT, NEVERTHELESS, TO TH EQUITY OF REDEPTION OF SAID MORTGAGOR IN SAID MORTGAGE NAMED, AND THE HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS AND ASSIGNS OF SAID MORTGAGOR THEREIN.

**IN WITNESS WHEREOF, THE SAID ASSIGNOR HAS EXECUTED BY ITS PROPER OFFICE THIS**

DATE: **JUL 0 6 2017**

**WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR RPMLT 2014-1 BY RUSHMORE LOAN MANAGEMENT SERVICES, LLC ITS APPOINTED ATTORNEY IN FACT**



BY: _____
NAME: **Drew Edwards**
TITLE: **Assistant Vice President**

# ACKNOWLEDGMENT

State of _____ ) SS:
County of _____

On __07|06|17__ before me the undersigned, a notary public in and for said state, personally appeared __Drew Edwards__, __Assistant Vice President__, personally known to me to be the duly authorized person who executed the within instrument on behalf of Rushmore Loan Management Services LLC, and acknowledged/sworn to me that such __Assistant Vice President__, executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

Witness my hand and official seal.

_____
Notary Public in and for said County and State
My commission expires on: Sept 1, 2019

HENRY NEWBY
MY COMMISSION EXPIRES
September 1, 2019

## ASSIGNMENT CHAIN EXHIBIT

Loan #: ████████

GAP
Assignor: CITIBANK, N.A.
Assignee: CITICORP MORTGAGE, INC., F/K/A CITICORP HOMEOWNERS, INC. AND SUCCESSOR IN INTEREST TO CITICORP HOMEOWNERS SERVICES, INC, A DELAWARE CORPORATION
Date Recorded: 8/14/2017      Dated: 8/2/17
County: NASSAU
Liber: 42306
Page: 607
Instrument: 2017-00079423

Assignor: CITICORP MORTGAGE, INC., F/K/A CITICORP HOMEOWNERS, INC. AND SUCCESSOR IN INTEREST TO CITICORP HOMEOWNERS SERVICES, INC. A DELAWARE CORPORATION
Assignee: SECURITY PACIFIC NATIONAL TRUST COMPANY (NEW YORK), AS TRUSTEE
Date Recorded: 3/28/2017   Dated: 10/17/1989
County: NASSAU
Liber: 13760
Page: 557
Instrument: N/A

Assignor: CITICORP MORTGAGE, INC., ATTORNEY IN FACT FOR BANKERS TRUST COMPANY AS SUCCESSOR TO BANK AMERICA NATIONAL TRUST COMPANY, F/K/A SECURITY PACIFIC NATIONAL TRUST COMPANY (NEW YORK) AS TRUSTEE
Assignee: CITIBANK, N.A.
Date Recorded: 11/01/1999   Dated: 7/23/1999
County: NASSAU
Liber: 19964
Page: 0427
Instrument: N/A

Assignor: CITIBANK, N.A. - GAP Assignment
Assignee: CITIMORTGAGE, INC
Date Recorded: 04/21/2014   Dated: 3/26/2014
County: NASSAU
Liber: 39642
Page: 34
Instrument: N/A

Assignor: CITIMORTGAGE, INC.
Assignee: PALISADES MORTGAGE ACQUISITION COMPANY, LLC
Date Recorded: 4/21/2014  Dated: 2/27/2014
County: NASSAU
Liber: 39642
Page: 36
Instrument: N/A

Assignor: PALISADES MORTGAGE ACQUISITION COMPANY, INC.
Assignee: CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTE FOR PALISADES MORTGAGE LOAN TRUST, SERIES 2013-4
Date Recorded: TO BE RECORDED CONCURRENTLY
County: NASSAU
Liber: N/A
Page: N/A
Instrument: N/A

Assignor: CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTE FOR PALISADES MORTGAGE LOAN TRUST, SERIES 2013-4
Assignee: WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR RPMLT 2014-1
Date Recorded: TO BE RECORDED CONCURRENTLY
County: NASSAU
Liber: N/A
Page: N/A
Instrument: N/A

**CERTIFICATE OF CONFORMITY OF ACKNOWLEDGMENT**
**NYS RPL § 299-a**

STATE OF _____**Texas**_____ :

COUNTY OF _____**Dallas**_____ : ss.: :

The undersigned does hereby certify that he/she is an attorney at law duly admitted to practice in the State of _____**Texas**_____ and residing at

_____**Dallas**_____, State of _____**Texas**_____; that he/she is a person duly qualified to make this certificate of conformity pursuant to Section 299-a of the Real Property Law of the State of New York; that he/she is fully acquainted with the laws of the State of _____**Texas**_____ pertaining to the acknowledgment or proof of deeds of real property to be recorded therein; that the foregoing acknowledgment by _*Henry Henry Dealers*_ named in the foregoing instrument taken before _*Henry Newby*_, a notary public (or other officer) was taken in the manner prescribed by such laws of the State of _____**Texas**_____, being the state in which it was taken; and that it duly conforms with such laws and is in all respects valid and effective in such state.

Witness my signature this _*1th*_ day of _*July*_, 20_*17*_

_____
Attorney-at-law for the State of **Texas**,
residing in the State of **Texas**

# LOAN MODIFICATION AGREEMENT
## (Fixed Rate With Monthly Principal and Interest Payments)

**Loan Number:** ███████

**Borrower(s):** Aaron Fischman and Nina Fischman

**Property:** 703 Carlyle St.  Woodmere, New York  11598

**Modification Code:**

### KEY TERMS OF THIS AGREEMENT

The following are key terms and values that are used in this Loan Modification Agreement ("Agreement"):

*Date of Agreement:*   __March 14, 2006__ .

*Unpaid Balance:* $228,630.03____ .  The amount expected to be owed as of   __March 1, 2006__
(Section 1).

*Interest Rate Modification Date:*   __February 1, 2006__ .  The date the Modified Interest Rate will take
effect (Section 2).

*Unmodified Interest Rate:*   __10.875__%.  The interest rate (stated as a yearly rate) before modification.
(Section 2).

*Modified Interest Rate:*   __6.375__%. The interest rate (stated as a yearly rate) after modification (Section
2).

*Maturity Date:*   __November 1, 2019__ .  The date by which all amounts owed must be paid in full (Section
3(A)).

*Payment Modification Date:*   __March 1, 2006__ .  The date of the first payment reflecting the Modified
Interest Rate (Section 3(B)).

*Current Payment:* $2,692.90____ .  The principal and interest payment before modification (Section
3(B)).

*Modified Payment:* $2,083.99____ .  The principal and interest payment after modification (Section
3(B)).

*Prepayment Penalty Option:* ☐ Yes ☒ No (See Section 5).

*Late Charge:*   __5.000__%.  The percentage charged on overdue payments (Section 6).

By signing below, the Borrower(s) agree to all of the terms of this Agreement, which consists of 5 pages. Any person signing below who signed the Security Instrument but who did not sign the Note is signing only to modify the Security Instrument and to consent to the modification of the Note and is not personally obligated to pay the amounts owed under the Note or the Sums Secured by the Security Instrument. Borrower(s) understand that Lender's consent to this Agreement is conditioned upon all Borrower(s) properly signing and returning this Agreement without any alterations or deletions by **March 16, 2006** and making all monthly payments due on or before the Interest Rate Modification Date.

Borrower **Aaron Fischman**   Date 3/13/06

Borrower **Nina Fischman**   Date 3/11/06

Borrower _____ Date _____   Borrower _____ Date _____

Borrower _____ Date _____   Borrower _____ Date _____

**Citimortgage, Inc., LENDER, or Power of Attorney for Lender**

By: _____

Name: **Chris Rivers**

Title: **Assistant Vice President**

CHRIS RIVERS
Assistant Vice President
CitiMortgage, Inc.
Consumer Direct Operations
100 Galleria Officentre/Suite 300
Southfield, MI 48034-8409

SOE Login ID ███████

## MODIFICATION AGREEMENT (CONTINUED)

This Agreement, between Borrower(s) and **Citimortgage, Inc.**
("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed including all Riders, (the "Security Instrument"), dated **October 17, 1989** and recorded in Book _____, Liber or Instrument _____, at page(s) _____, of the Recorders Office of the Records of **, New York** County and (2) the Adjustable Rate Note, including all Riders (the "Note") bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at the address shown above, the real property described being set forth in the Legal Description in the Security Instrument.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree (notwithstanding anything to the contrary contained in the Note or Security Instrument) to modify the Note and Security Instrument as follows.  All other provisions of the Note and Security Instrument not modified by this Agreement remain in full force and effect.

## 1. BORROWER'S PROMISE TO PAY UNPAID PRINCIPAL BALANCE

The Unpaid Principal Balance specified on the first page of this Agreement is the amount expected to be payable under the Note and the Security Instrument as of the date specified on the first page of this Agreement and consists of the amount(s) loaned to Borrower by Lender and any interest capitalized to date.

The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Borrower will make all payments under this Agreement in the form of cash, check or money order.

Borrower understands that Lender may transfer the Note. Lender or anyone who takes the Note by transfer and who is entitled to receive payments under this Agreement is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  Effective on the Interest Rate Modification Date, the Interest Rate required as of the date of this Agreement by the Note will be modified from the Unmodified Interest Rate to the Modified Interest Rate. The interest rate Borrower will pay may change in accordance with Section 4 of this Agreement.  The Interest Rate Modification Date, Unmodified Interest Rate, and Modified Interest Rate are specified on the first page of this Agreement.

The interest rate required by this Section 2 and Section 4 of this Agreement is the rate Borrower will pay both before and after any default.

Any provisions in the Note providing for a fixed interest rate conversion option are eliminated.

## 3. PAYMENTS

### (A) Time and Place of Payments
Borrower will pay principal and interest by making a payment on the first day of every month. Borrower will make these payments every month until Borrower has paid all of the principal and interest and any other charges described below that Borrower may owe under the Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on the Maturity Date specified on the first page of this Agreement Borrower still owes amounts under the Note, Borrower will pay those amounts in full on that date.

Borrower will make the monthly payments at **Citimortgage, Inc. 725 West Sahara Avenue Attn: Payment Mail Opening Las Vegas, Nevada  89117** or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
Beginning on the Payment Modification Date, the amount of Borrower's monthly payments required by the Note will be modified from the Current Payment to the Modified Payment. This amount may change in accordance with this Agreement. The Payment Modification Date and the amounts of the Current Payment and the Modified Payment are specified on the first page of this Agreement.

## 4. BORROWER'S RIGHT TO PREPAY

Borrower has the right to make payments of Principal at any time before they are due (provided however, that if Prepayment Penalty Option is checked on the first page of this Agreement, such payments may result in a prepayment penalty). A payment of Principal only is known as a "Prepayment." When Borrower makes a Prepayment, Borrower will tell the Note Holder in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the Note.

The Note Holder will use the Prepayments to reduce the amount of Principal that Borrower owes under the Note. However, the Note Holder may apply the Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying the Prepayment to reduce the Principal amount of the Note. If Borrower makes a partial Prepayment, there will be no changes in the due date of the monthly payment unless the Note Holder agrees in writing to those changes. A partial Prepayment may reduce the amount of the monthly payments after the next Change Date following the partial Prepayment. However, any reduction due to the partial Prepayment may be offset by an interest rate increase.

**Prepayment Penalty Option** - The first page of this Agreement indicates whether or not there is a Prepayment Penalty Option. If "Yes", full or partial Prepayments may require the Borrower to pay a Prepayment charge as described in the attached Prepayment Penalty Option Rider to Loan Modification Agreement. If "No", Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. Any provisions in the Note providing for a prepayment penalty are eliminated.

## 5. LATE CHARGE FOR OVERDUE PAYMENTS

If the Note Holder has not received the full amount of any monthly payment by the end of __15__ calendar days after the date it is due, Borrower will pay a late charge to the Note Holder. The amount of the charge will be the percentage of the overdue payment of principal and interest specified as the Late Charge on the first page of this Agreement. Borrower will pay this late charge promptly but only once on each late payment.

## 6. SECURITY INSTRUMENT PROVISIONS ON TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

The Security Instrument protects the Note Holder from possible losses that might result if Borrower does not keep the promises that Borrower makes in the Note. The Security Instrument describes how and under what conditions Borrower may be required to make immediate payment in full of all amounts Borrower owes under the Note. Some of these conditions relate to the transfer of the Property or to the transfer of a beneficial interest in the Borrower if the Borrower is not a natural person ("Transfer Provisions"). The Transfer Provisions of the Security Instrument are modified as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract

(Page 4 of 6)

or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with the notice provisions of this Security Instrument within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.